AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Utah

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A black and blue Swiss Gear backpack and the contents therein, and a white IPhone, model A1549, IMEI 352021076935758 (see Attachment A)

Case No. 2:17-cr-728-RJS (crossed out)   2:18mj22 DBP

*FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
JAN 1 6 2018
BY D. MARK JONES, CLERK
DEPUTY CLERK*

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A and affidavit incorporated herein by this reference.

located in the _____ District of ___Utah___, there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B and affidavit incorporated herein by this reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) | Bank Robbery |

The application is based on these facts:
See attached affidavit in support of the search warrant application, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

FBI Special Agent Jeremiah Fowlke
Printed name and title

Sworn to before me and signed in my presence.

Date: 1/16/18

_____
Judge's signature

City and state: Salt Lake City, Utah

Magistrate Judge Dustin Pead
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| IN THE MATTER OF THE SEARCH OF: | |
|---|---|
| Items seized from Wayne Harms incident to his arrest: Black and blue Swiss Gear backpack and the contents therein, and a white IPhone, model A1549, IMEI 352021076935758. | Case No. ~~2:17-cr-728~~ RJS +  2:18mj22 DBP |

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT**

I, Jeremiah Fowlke, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been so employed by the FBI since December of 2010. In August 2016, I was assigned to the FBI Violent Crimes Task Force (VCTF) and I am tasked with investigating bank robbery, carjacking, and other violent crimes. As a Special Agent with the FBI, I have participated in several investigations involving carjacking in violation of Title 18, United States Code, Section 2119, in addition to other extensive criminal investigations. I have received numerous training related to the investigations of violent crimes and the collection of evidence related to violent crimes.

2. The facts in this affidavit come from information obtained from your affiant, other law enforcement officers, and witnesses. Your affiant has read and become familiar with the facts set forth in this affidavit. This affidavit is intended to show merely that there is

1

sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. This affidavit is in support of a search warrant application for the following items in connection with an investigation of Wayne Harms, for the Bank Robbery of the Washington Federal Bank, in violation of 18 U.S.C. § 2113(a).

## PROPERTY TO BE SEARCHED

4. This affidavit is made in support of an application for a search warrant to search and seize the following items that was seized from Wayne Harms incident to his arrest:

- Black and blue Swiss Gear backpack and the contents therein
- White IPhone, model A1549, IMEI 352021076935758

## PROBABLE CAUSE

1. On November 27, 2017, Unified Police Department (UPD) and the FBI responded to a robbery complaint at the Washington Federal Bank, located at 3983 S. Wasatch Boulevard, Salt Lake City, Utah. A male suspect entered the bank and gave the teller a note demanding money. The teller provided the suspect with money from her bank drawer. After receiving the money, the male fled the bank and was not located.

2. Your affiant responded to Washington Federal Bank to conduct an investigation concerning the details of the robbery. Your affiant interviewed the victim employee, Brittni Chase (CHASE). CHASE told your affiant that the male suspect entered the bank, approached her teller station and gave her a piece of paper. CHASE picked up the paper and read it. The piece of paper stated that, "this is a robbery do not scream, do not react. Open your drawer and

give me unbundled $50 and $100 bills. Do it now and nobody will get hurt." CHASE advised that she gave the suspect all the cash from her drawer consisting of $20, $10, $5 and $1 bills.

3. CHASE further advised that she also gave the suspect $100 worth of bait bills, which consisted of five $20 bills. After she gave the suspect the money, he walked out of the bank, but CHASE did not see what direction the suspect went. The suspect left the demand note at the teller station, later seized by UPD.

4. CHASE described the suspect as being a Caucasian male with tan skin, approximately 5'7", with a normal build, and dark black hair, which was thinning on top. He was wearing a darker Khaki colored coat and dark pants. She described the suspect as having a raspy voice. The suspects did not attempt to cover or disguise his face.

5. Investigators also interviewed Mackenzie Neville (NEVILLE) who was working at the bank and witnessed the robbery. NEVILLE advised that she was sitting at her desk near the back of the business when she looked up and observed the suspect enter the bank. NEVILLE described the suspect as a white male with a darker skin tone. She said the suspect had black hair, which was balding and cut close. He had a muscular build and a goatee. The suspect was wearing a green army style jacket with a gray hoodie sticking out, dark jeans, and boots.

6. NEVILLE told investigators that she looked up as the suspect entered and she told him "hi." The suspect mumbled a response she couldn't understand and then approached the victim teller and put a note on the counter while saying something about a check. NEVILLE noticed he kept his hands in his pockets as if he was holding a weapon under his coat. The suspect remained at the counter for just about 30 seconds then left out the front door in an unknown direction. NEVILLE asked CHASE if they had just been robbed. When she said yes, NEVILLE pushed the alarm and locked the front door.

7.      Your affiant was provided and reviewed several still photos from Washington Federal Bank surveillance. These photographs were forwarded to the Unified Police Department Media Services and were released to several local media outlets for distribution to the public asking for assistance in identifying the suspect.

8.      On November 28, 2017, your affiant learned of a tip concerning the identity of the suspected robber. According to the information provided by a known citizen, the citizen called and advised that he had observed news footage of the bank robbery. The citizen believed the suspect is a male he knows as Wayne Harms (HARMS). The citizen dealt with HARMS on several occasions over the last week and had observed HARMS wearing the same clothing as the suspect in the bank surveillance photos. The citizen provided a cell phone number HARMS had used to contact him within a week prior to the bank robbery (916-963-0046). The citizen provided that he had searched Facebook using HARMS' phone number, observed several photos from HARMS' Facebook account, and is certain he is the robbery suspect.

9.      On November 28, 2017, your affiant was able to locate a Nebraska and a California driver's license for a Wayne Alan Harms, born January 28, 1969. The photograph in the Nebraska driver's license bares a strong resemblance to the individual that robbed the Washington Federal Bank on November 27, 2017.

10.     On November 28, 2017, your affiant conducted a follow up investigation with the citizen. The citizen advised that he was watching the news and saw a story for a bank robbery that had occurred earlier in the day. Upon seeing the photograph of the bank robbery suspect, the citizen immediately recognized the suspect to be HARMS. The citizen had spent time with HARMS on several occasions due to HARMS' vehicle breaking down. The first time the citizen met HARMS was on November 19, 2017, when the citizen received a call concerning a black

4

1998 BMW 740I belonging to HARMS. The citizen spent a significant amount of time attempting to assist HARMS.

11. On Friday, November 24, 2017, HARMS contacted the citizen and informed him that he was going to be arriving back in Utah and would need a ride back from the train station to pick up his vehicle. The citizen picked up HARMS at the AMTRAK station and brought him back to an auto repair shop. HARMS paid cash for the repairs. After paying or the repairs, HARMS took his vehicle and left. Approximately two hours later HARMS called the auto repair shop and said that his vehicle was still not running properly. An employee of shop met HARMS and towed his vehicle back to shop. HARMS advised that he didn't have enough money for the new repairs, but would work on it over the weekend. He would also need assistance in getting a hotel room because he didn't have any identification with him. The citizen's employer ask him to assist HARMS in getting a motel room. The citizen took HARMS to the Econo Lodge in Salt Lake City, Utah.

12. On Sunday November 26, 2017, HARMS sent the citizen several text messages in the middle of the night asking if he could pay for the repairs via PayPal, but eventually changed his mind and advised he would just pay in cash on Monday morning. Early Monday morning HARMS sent several more text messages to the citizen stating he needed him to come pick him up from the Econ Lodge and help him get his deposit back since he had rented the room in the citizen's name. The citizen picked up HARMS at the Econo Lodge and drove him to the shop to pick up his vehicle. HARMS still didn't have any money to pay for new repairs, but the shop just gave him his vehicle back. HARMS took his vehicle and left. The citizen stated this was the last he had heard from HARMS. The citizen provided a license plate number for the vehicle HARMS

5

was driving. He provided the California license plate listing 4NKV374. All communications from HARMS to the citizen were via cell phone.

13. On November 28, 2017, your affiant responded to the Econo Lodge in Salt Lake City and was able to review surveillance footage. Your affiant observed surveillance footage of HARMS during the time he was checking out of the motel. HARMS is seen wearing a coat, hoodie, and pants that were similar in color and fashion to the coat the suspect wore during the Washington Federal Bank Robbery. After reviewing the video surveillance from Econo Lodge and comparing that to the photos of the Washington Federal Bank robbery, it is the belief of all the investigators involved that the robbery suspect is HARMS.

14. On November 28, 2017, the citizen informed your affiant that he had received a text message from HARMS. The text came from the phone number 916-963-0046. The citizen advised that the text stated HARMS was on a train heading to California, but he had left his vehicle on the side of the roadway at 3316 south Monte Verde Drive in Salt Lake City. He requested the citizen to tow the vehicle to the shop to replace the tires. HARMS informed the citizen he would mail him the keys to the vehicle and be back to pick it up on Friday, December1, 2017. Your affiant conducted a search of 3316 South Monte Verde Drive and found 3316 South Monte Verde Drive to be approximately 1.2 miles from the Washington Federal Bank. UPD Detectives responded to 3316 south Monte Verde Drive and located a black BMW with California license plates attached to the front and back of the vehicle. The plates on the vehicle were 4NKV374. UPD Detectives requested an evidence tow truck respond to take custody of the vehicle and tow it to the Unified Property and Evidence.

15. Unified Police Detective Jeremy Wilson authored a search warrant for the call detail records belonging to the phone number 916-963-0046. After receiving and reviewing the

returns, your affiant learned that the target telephone number hit off cellular telephone towers that service the area of, or near, the location for the bank robbery on November 27, 2017.

16. On November 28, 2017, UPD Detective Brent Adamson presented CHASE and NEVILLE a photo line-up. The line-up contained a photo of HARMS. Detective Adamson informed your affiant that NEVILLE positively identified the photo of HARMS as the suspect who robbed the bank on November 27, 2017. Detective Adamson further informed your affiant that CHASE did not identify any of the photos as being the suspect who robbed the bank.

17. On November 28, 2017, Detective Adamson contacted AMTRAK Police and was notified HARMS had boarded an Amtrak train in Salt Lake City on November 27, 2017 and departed around 2330 hours headed to Roseville California. HARMS arrived in Roseville at 1315 hours on November 28, 2017. Investigator Kurup confirmed HARMS used a MasterCard ending in "6493" to purchase the ticket in his name. HARMS provided the address 9160 Madison Ave #72 Fair Oaks Ca 95628 with a telephone number 916-963-0046.

18. On December 3, 2017, the same citizen informed your affiant that he had received additional text messages from HARMS, but this time from a new telephone number. The new number was 916-827-5670. Harms advised the citizen that he would be arriving in Utah on the Amtrak train that arrived at 0330 hours on December 4, 2017.

19. On December 3, 2017, your affiant contacted Amtrak police and learned that HARMS purchased a train ticket under the name of Larry Downing. The ticket was for train #6 and it was scheduled to arrive in Salt Lake City on December 4, 2017, shortly after 0300 hours.

20. On December 4, 2017, your affiant and other law enforcement personnel made contact the Amtrak personnel at the Salt Lake City station. Upon the arrival of train #6, your affiant entered the train and located HARMS sleeping in his seat. HARMS was taken into

custody without incident and his property was seized, to include, but not limited to a black and blue Swiss Gear backpack, a white IPhone, model A1549, IMEI 352021076935758, and a green jacket with a grey hood.

21. Based on your affiants training and experience, he has learned that criminals use cellular telephones before, during, and after the commission of criminal activity to plan and discuss said activity. All communications with the citizen were made via cellular phone and such evidence would support the citizen's statement concerning HARMS as the individual who robbed the Washington Federal Bank. Based on these facts, your affiant believes that further conversations or evidence of additional criminal activity is likely to be found on HARMS' cellular telephone.

## AUTHORIZATION REQUEST

22. Based on the foregoing, I submit there is probable cause to search and seize the items referenced above in Paragraph 4 and below in Attachment A and for the items referenced in Attachment B.

Respectfully submitted,

JEREMIAH FOWLKE
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ~~September~~ January 16, 2018

Dustin Pead
United States Magistrate Judge

## ATTACHMENT A – ITEMS TO BE SEARCHED

Items located on Wayne Harms at the time of his arrest by the FBI to include, but not limited to a black and blue Swiss Gear backpack and the contents therein, and a white IPhone, model A1549, IMEI 352021076935758. These items are currently in the custody of the FBI at 5425 W. Amelia Earhart Drive, Salt Lake City, Utah 84116.

**ATTACHMENT B – ITEMS TO BE SEIZED**

Evidence of, or relating to, the commission of a Bank Robbery in violation of 18 U.S.C 2113(a):

1. Items that were in Wayne Harm's possession at the time of his arrest to include, but not limited to a black and blue Swiss Gear backpack and the contents therein;

2. White IPhone, model A1549, IMEI 352021076935758, to include, but not limited to:

   A. Any and all content or communication associated with the commission of a bank robbery, which includes, but not limited to, emails, text messages, photographs, and chat logs found on the device.

   B. Any and all GPS or locational data that will provide information related as to the devices location during the bank robbery and its time in Utah.

   C. Any and all information, notes, software, documents, records, or correspondence, in any format and medium, pertaining to violations of 18 U.S.C. §§ 2113(a)

   D. Any and all information, notes, documents, records, or correspondence, in any format or medium, pertaining to bank robbery.

   E. Any and all information, notes, documents, records, or correspondence, in any format or medium, concerning Internet activity reflecting an interest in bank robbery.

   F. Any and all address books, names, and lists of names and addresses of individuals who may have been contacted by use of the Device(s) or by other means for the purpose of committing violations of 18 U.S.C. §§ 2113(a).

   G. Any and all information, notes, documents, records, or correspondence, in any format or medium, concerning membership in online groups, clubs, or services that provide information related to committing violations of 18 U.S.C. §§ 2113(a).

   H. Any and all information, records, documents, invoices and materials, in any format or medium, that concern any accounts with an Internet Service Provider pertaining to violations of 18 U.S.C. §§ 2113(a).

   I. Any and all information, records, documents, invoices and materials, in any format or medium, that concern e-mail accounts, online storage, or other remote computer storage pertaining to violations of 18 U.S.C. §§ 2113(a).

1

J. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of 18 U.S.C. §§ 2113(a), or that show who used, owned, possessed, or controlled the Device(s).

K. Any and all information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of the Device(s), or that aid in the identification of persons involved in violations of 18 U.S.C. §§ 2113(a).

L. Credit card information, bills, and payment records pertaining to violations of 18 U.S.C. §§ 2113(a).

M. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of 18 U.S.C. §§ 2113(a).

N. Evidence of who used, owned, or controlled the Device(s) to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

O. Evidence of software that may allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

P. Evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence.

Q. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s).

R. Evidence of how and when the Device(s) were used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

S. The telephone number, ESN number, serial number, and/or SIM card numbers of or contained in the Device(s).

      T. Passwords, encryption keys, and other access devices that may be necessary to access the Device(s).

      U. Contextual information necessary to understand the evidence described in this attachment.

DEFINITIONS:

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

4. "Visual depiction" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).